**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| GREGORY L. SOLLY, | : | Case No. 2:24-cv-1249 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Chief Judge Algenon L. Marbley |
| | : | Magistrate Judge Elizabeth P. Deavers |
| LISA HOYING, CHAIRPERSON | : | |
| OHIO PAROLE BOARD, *et al*., | : | |
| | : | |
| Defendants. | : | |

**ORDER and**
**REPORT AND RECOMMENDATION**

Gregory L. Solly, an Ohio prisoner proceeding without the assistance of counsel, recently filed a Complaint with the Court. (ECF No. 6). He alleges that his constitutional rights were violated during a June 2023 parole suitability hearing. (*Id*.). Plaintiff Solly has paid the filing fees to proceed in this matter. (ECF No. 4).

The case is currently before the Court for the required screening of the Complaint under 28 U.S.C. § 1915A. At this time, the undersigned United States Magistrate Judge concludes that three of Plaintiff's claims may **PROCEED** to further development. The Undersigned **RECOMMENDS** that the Court **DISMISS** the remaining claims and two Defendants.

I.    <u>**Screening Standard**</u>

Because Plaintiff is a prisoner seeking "redress from a governmental entity or officer or employee of a governmental entity," the Court is required to screen his Complaint. 28 U.S.C. § 1915A(a). The Court must dismiss the Complaint, or any portion of it, that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams*, 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no arguable *legal* basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327.  An action has no arguable *factual* basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992); *Lawler*, 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

A complaint must also be dismissed if it fails to state a claim on which relief may be granted.  28 U.S.C. §§ 1915A(b)(1).  To state a claim for relief, a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court must construe the complaint in plaintiff's favor, accept all well-pleaded factual allegations as true, and evaluate whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  However, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient.  *Id*. (quoting *Twombly*, 550 U.S. at 555).

In the interest of justice, this Court is also required to construe a pro se complaint liberally and hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) and citing Fed. R. Civ. P. 8(f) [now (e)]). Even with this liberal construction, a pro se complaint must still adhere to the "basic pleading essentials." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Specifically, a pro se "complaint 'must contain either direct or inferential allegations respecting all the material elements' to recover under some viable legal theory." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 678.

## II.    Parties and Claims

Plaintiff Gregory L. Solly is a prisoner in the custody of the State of Ohio. (Complaint,[1] PageID 66, ¶ 1). He was "convicted in 1980 of the murder of a five-year old boy." *Solly v. Mausser*, No. 2:15-cv-956, 2018 WL 1070504, at *1 (S.D. Ohio Feb. 27, 2018) (Marbley, C.J.); *see also State v. Solly*, 6th Dist. Lucas No. L-83-279, 1983 WL 2335, at *1 (Dec. 23, 1983). Plaintiff currently resides at the Allen/Oakwood Correctional Institution ("AOCI") (*id.*, PageID 64, 67, ¶ 3), where he is serving "an indefinite sentence of fifteen years to life, with parole eligibility after serving fifteen years." *Solly v. Mausser*, 2018 WL 1070504, at *1.[2]

It appears that the Ohio Parole Board ("OPB" or "the Board") has considered Plaintiff's eligibility or suitability for parole on a few occasions. *See* "Plaintiff's Notice To Reopen And To

---

[1] For better readability, the Undersigned refers to the Complaint, of record as ECF No. 6, PageID 64-85, simply as the "Complaint." Paragraph numbers may be used for greater precision.

[2] The Court may take judicial notice of these and other court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

Refile Case" in *Solly v. Turner*, No. 1:95-cv-387 (S.D. Ohio June 10, 2004) (discussing a ten-year continuance); *Solly v. Mausser*, 2018 WL 1070504, at *9 (considering Plaintiff's claims based on his 2013 parole hearing and ten-year continuance, and noting his reference to two prior hearings). The case that is currently before the Court concerns Plaintiff's most recent parole suitability hearings in June 2023. (Complaint, ¶ 17).

According to Plaintiff, the five participating Board members held a hearing in which Plaintiff participated, but they could not reach a decision. (Complaint, ¶¶ 17-37). The matter was referred to the Central Office Board of Review ("COBR"). (*Id.*, ¶ 37). The members of the COBR did not find Plaintiff suitable for parole and imposed a ten-year continuance, meaning that the Board would next consider Plaintiff's suitability for parole after ten years, or in 2033. (*Id.*, ¶ 41). The website of the Ohio Department of Rehabilitation & Correction ("ODRC") reflects that Plaintiff's next parole board hearing will be in April 2033. Available at https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A160947 (last visited June 10, 2024).

Plaintiff's claims in this case concern the proceedings before the Board and the COBR. He asserts generally that he

> does not claim immediate entitlement to parole, but instead lodges a challenge to the procedures used during the parole process as generally improper or improper as applied in his case and that such a challenge is cognizable under section 1983.

(Complaint, PageID 67).

Plaintiff primarily asserts that Defendants relied on false information in reaching their decisions, and that they denied him the opportunity to present evidence or to correct or refute the

4

false information.[3]  (Complaint, ¶¶ 1(1)-(2), 23-24, 28, 38-39, 44-50, 53).  He specifically alleges that Defendants denied him to opportunity to submit letters from the victim's sister.  (*Id*., ¶¶ 1(4), 50).  Relatedly, Plaintiff asserts that the COBR members "unconstitutionally increased Plaintiff's crime from 2nd degree murder to aggravated murder [2x], as a means to deny parole to Plaintiff," and demanded that Plaintiff "account for an offense more serious that the offense Plaintiff actually committed."  (*Id*., ¶¶ 1(5), 40, 51).  He also may allege that Defendants improperly held him responsible for everything that happened to the victim, as shown in the autopsy photographs, including what his two co-defendants did.  (*Id*., PageID 83).

In addition, Plaintiff asserts that he should have been given a copy of his "parole candidate information sheet," which he says contains false information.  (Complaint, ¶¶ 16, 43).  He asserts that certain Defendants intimidated and demeaned him at the hearing by asking questions about his religion and showing photographs from the victim's autopsy report.  (*Id*., ¶¶ 1(6), 26; ¶¶ 19, 27).

Plaintiff also appears to allege that Defendants used parole guidelines that do not apply to him, which allowed them to impose a ten-year continuance, rather than the proper maximum of a

---

[3] Plaintiff describes the "false information, misinformation, and disinformation" on which Defendants relied as including the following:

   a)   tying up people (?) and detaining them;
   b)   plaintiff never possessing a commercial driver's license;
   c)   plaintiff ever being a [unsupervised] inmate road driver;
   d)   never at liberty to work [unsupervised] within society for several years;
   e)   plaintiff never worked [unsupervised] at the prison's water plant;
   f)   plaintiff never was at liberty to travel to cities throughout Ohio, [unsupervised] for approximately four (4) years;
   g)   that plaintiff never resided at the unfenced honor camp at London Correction prison for approximately ten (10) years, at liberty;
   h)   that plaintiff scalded the victim;
   i)   that their information [unknown to plaintiff] determines that plaintiff is a risk and threat to society;
   j)   that plaintiff's crime is actually aggravated murder according to their information;
   k)   and other misinformation or disinformation that may be discoverable.

(Complaint, ¶ 53 (as in original); *see also* ¶¶ 28, 31-35).

five-year continuance.  (Complaint, ¶¶ 41, 52).  Finally, he asserts that he was punished more severely than his co-defendant and other unidentified inmates.  (*Id*., ¶¶ 1(3), 44-49).

Plaintiff raises these claims under 42 U.S.C. § 1983.  (Complaint, PageID 66-67).  He sues nine defendants, all affiliated with the ODRC, the Ohio Adult Parole Authority ("OAPA") the Board, and/or COBR:

1.  Lisa Hoying, OAPA Chairperson and COBR member,

2.  Annette Chambers-Smith, ODRC Director,

3.  Glenn Holmes, OPB Member,

4.  Joe Brumfield, OPB Member,

5.  Scott Windmer or Widmer, OPB Member,

6.  Lance Presley or Pressley, OPB Member,

7.  Steve Herron, OPB Member,

8.  Scott R. Coleson, AOCI [Institutional] Parole Officer, and

9.  Marc Houk, COBR Member.

(Complaint, PageID 64-65, 68).  Although the Complaint is not entirely consistent in this respect, it appears that five members of the Board participated in the board hearing:  Defendants Holmes, Brumfield, Widmer, Pressley, and Herron.[4]  (*Id*., ¶¶ 6-11, 17).  Plaintiff says that Defendants Houk and Hoying participated in the COBR hearing (*id*., ¶¶ 12-13, 39), along with Defendants Holmes, Brumfield, Pressley, Herron, and perhaps Widmer.  (*Compare id*., ¶¶ 39-40, 49, 51 (omitting Widmer) *with* ¶¶ 41, 50, 52-53 (including Widmer)).  All Defendants are sued in their

---

[4] At one place in the Complaint, Plaintiff says that Defendant Coleson was also "an active member presiding in Plaintiff's June 2023 parole hearing."  (Complaint, ¶ 11).  This may be a clerical error.  Coleson is not otherwise described as a Board member in the Complaint but is instead described as a parole officer at AOCI where Plaintiff resides.  (*Id*., PageID 64).  The only allegation against Coleson is that he "den[ied] Plaintiff's request for a parole candidate information sheet" prior to the Board hearing.  (*Id*., ¶ 43; *see also* ¶ 16).

individual and official capacities.  (*Id.*, PageID 69).

For relief, Plaintiff seeks several declarations that generally correspond with his claims of unconstitutional conduct.  (Complaint, PageID 78-83).  He also seeks injunctive relief (including an order for a new parole hearing) and monetary damages.  (*Id.*, PageID 83-85).

III.  **Analysis**

A.  **Some claims may proceed to further development.**

At this early stage of the case, without the benefit of an answer or other briefing, the Undersigned concludes that <u>three</u> claims in the Complaint, liberally construed, may **PROCEED** to further development.

**First**, Plaintiff's Fourteenth Amendment due process claim may proceed at this time.[5] This encompasses Plaintiff's partially overlapping allegations that Defendants:

    a.  relied on false information to deny him parole,

    b.  erroneously considered him to have been convicted of aggravated murder, rather than second degree murder,

    c.  improperly held him responsible for injuries caused by his co-defendants,

    d.  refused to accept letters from the victim's sister, and

    e.  denied him the opportunity to submit evidence to rebut the false information.

This claim may proceed against <u>seven</u> defendants:  Holmes, Brumfield, Widmer, Pressley, Herron, Hoying, and Houk.

---

[5] *See generally Dodson v. Mohr*, No. 21-3778, 2022 WL 3954932, at *3 (6th Cir. July 28, 2022) (citing *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St. 3d 375 (2014)) ("the OPB's knowing reliance on false information in a parolee's file, which is prohibited under state law, can constitute a due process violation").

**Second**, Plaintiff may proceed with his claim concerning the maximum length of a parole continuance.[6]  This claim may proceed against the Defendants participating in the COBR proceeding (as that is the body that imposed the continuance), which appears to be the same seven defendants listed above.

**Third**, Plaintiff may proceed with his Eighth Amendment claim that certain Defendants presented a "photo array" of the five-year old victim's autopsy in order to "intimidate and to psychologically and emotionally demean" him.[7]  (Complaint, PageID 79; *see also* ¶¶ 19, 27, and PageID 83).  This claim may proceed against Defendants Brumfield, Widmer, Pressley, and Herron.  (*See id.*, ¶ 19 (Brumfield, Pressley, Widmer, and Herron); ¶ 27 (Widmer, Herron, and Brumfield); PageID 79 (Brumfield, Widmer, and Herron).

The Undersigned expresses no opinion at this time on the merits of these claims or whether there may be defenses or procedural bars that will prevent Plaintiff from ultimately obtaining relief.

**B.     Some claims should be dismissed.**

1.     Official Capacity Claims for Damages

Plaintiff cannot bring a suit for damages against a state agency or its employees in their official capacity.  *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998).

---

[6] *See generally* Jennifer Muench-McElfresh, *Reflections from the Bench: Ohio Sentencing Law*, 21 Ohio St. J. Crim. L. 33, 33-36 (2024) (providing a brief history of Ohio sentencing law); *Richard v. Mohr*, No. 2:13-cv-1013, 2014 WL 868242, at *6 (S.D. Ohio Mar. 5, 2014), *aff'd*, No. 14-3420 (6th Cir. Jan. 23, 2015) (discussing revisions to Ohio Admin. Code. § 5120:1-1-10, which "formerly provided that if parole is denied at the first hearing, the board was required to set a time for a continued hearing not more than five years after the date of the initial hearing, 'unless the parole board determines sufficient cause has been demonstrated to set a date in excess of five years'" and "was amended in 1998, and now requires the board to set the time 'for a subsequent hearing, which shall not be more than ten years after the date of the hearing.'").  This claim may raise *ex post facto* and/or other concerns.

[7] Plaintiff made a similar factual statement about his 2013 parole hearing.  *See Solly v. Mausser*, No. 2:15-cv-956, 2015 WL 6774313, at *1 (S.D. Ohio Nov. 6, 2015) (adopting report and recommendations) ("An officer also questioned Plaintiff about an autopsy report of his victim; Plaintiff contends that this line of questioning was intended to demean and verbally abuse him").  It does not appear that an Eighth Amendment claim was pursued in that case.

"The Eleventh Amendment protects a state official from suit for monetary damages in his or her official capacity because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself.'" *Zakora v. Chrisman*, 44 F. 4th 452, 474 (6th Cir. 2022) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63-64, 71 (1989) (citations omitted)). *See also Monell v. Dep't of Soc. Services*, 436 U.S. 658, 690 n.55 (1978) (holding that "neither a State nor its officials acting in their official capacities are 'persons'" who may be held liable for constitutional violations in a § 1983 action).

Here, all Defendants are state officials or employees affiliated with one or more state agencies or departments.  (Complaint, PageID 68-69).  Any claims for monetary damages against them in their official capacities are therefore barred by the Eleventh Amendment.

2.    Equal Protection Claims – Fourteenth Amendment

Throughout the Complaint, Plaintiff refers to his "First Amendment rights to equal protection."  (*See, e.g.,* Complaint, PageID 66-67).  The Undersigned understands this as a reference to the United States Constitution's Equal Protection Clause, which is found in the Fourteenth Amendment.  The First Amendment does not contain an equal protection clause.  It provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend. I.  The Fourteenth Amendment, however, provides in relevant part that:  "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  Accordingly, the Undersigned considers Plaintiff's equal protection claims to arise under the Fourteenth Amendment, rather than the First Amendment.

9

"The Equal Protection Clause of the Fourteenth Amendment 'protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012) (quoting *Scarbrough v. Morgan Cnty. Bd. of Educ.,* 470 F.3d 250, 260 (6th Cir. 2006)). "Equal protection challenges are 'typically . . . concerned with governmental classifications that affect some groups of citizens differently than others.'" *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601, 170 L.Ed.2d 975 (2008)).

Plaintiff's equal protection claim here has several facets. Most concretely, he alleges that "defendants deliberately targeted plaintiff to being punished more severely than his co-defendant, and other inmates similarly situated." (Complaint, ¶¶ 1(3) (as in original), 44-49). He asserts that Defendants granted parole to his co-defendant. (*Id.*, ¶ 49). He does not identify any other inmates who are similarly situated or provide facts to develop this claim, or make any argument beyond this single, repeated assertion about other inmates.

Plaintiff raised an equal protection claim after his parole hearing in 2013. This Court analyzed the claim as follows, on a motion for summary judgment:

> Plaintiff alleges that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment when they treated him differently than similarly situated individuals and denied him parole. (*See generally* Fourth Am. Compl.)
>
> The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids discrimination that "'burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference.'" *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461 (6th Cir. 2012) (quoting *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681-682 (6th Cir. 2011)). The Equal Protection Clause prohibits only intentional discrimination. *Foster v. Michigan*, 573 Fed.Appx. 377, 391 (6th Cir. 2014).
>
> Here, Plaintiff does not argue, or demonstrate, that Defendants have burdened a fundamental right. (*See generally* Fourth Am. Compl.; Opposition.) Notably, Plaintiff apparently concedes that he does not have a fundamental right to parole.

10

> (Opposition at 3-4.) This Court agrees. *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005) ("Moreover, there is no fundamental right to parole under the federal constitution."). In addition, Plaintiff, a Caucasian inmate, does not assert, or establish, a violation of the second kind, i.e., that he is a member of a suspect class. "Without question, prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson*, 411 F.3d at 619 (6th Cir. 2005).
>
> Plaintiff, therefore, asserts a violation of the third kind, i.e., Defendants intentionally treated him differently than others similarly situated without any rational basis for the difference. *Loesel*, 692 F.3d at 461; S*uperior Commc'ns v. City of Riverview*, No. 17-1234, 2018 WL 651382, at *10 (6th Cir. Feb. 1, 2018) (noting that an alleged violation of the third kind of violation is a "class-of-one" violation (internal quotation marks and citation omitted*)); see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) ("Our cases have recognized successful equal protection claims brought by a 'class of one[.]' "). . . . *Loesel*, 692 F.3d at 461-68. In this analysis, "[c]lass-of-one claims are generally viewed skeptically" and "a plaintiff must overcome a 'heavy burden' to prevail based on the class-of-one theory." [*Loesel*, 692 F.3d] at 461-62 (quoting *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 791 (6th Cir. 2005)). A defendant "has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005); *see also Davis v. Prison Health Sys*., 679 F.3d 433, 441 (6th Cir. 2012) ("[A]ll class-of-one claims are subject to rational basis review.").

*Solly v. Mausser*, No. 2:15-cv-956, 2018 WL 1070504, at *3-4 (S.D. Ohio Feb. 27, 2018)

(Marbley, C.J.). In that case, Plaintiff alleged he was treated differently based on his race. *Id*.

Here, he does not articulate any reason he was treated differently.[8] And he does not provide any

information about comparators other than his co-defendant, who he says was granted parole.

(Complaint, ¶ 49).

Plaintiff raised a similar claim about his co-defendant in the previous case, which the

Court found to be factually untrue:

> Plaintiff's assertion that his Co-Defendant, Phillip Jovanovich, was treated less harshly than him because Inmate Jovanovich was given "no multiple 10 yr flops" is equally unavailing. (Opposition at PAGEID # 846.) . . . Notably, the record reflects that, <u>contrary to Plaintiff's assertion that he was treated more harshly than Inmate Jovanovich, this inmate "was likewise denied parole in 2013</u> and will not

---

[8] Plaintiff also does not claim a fundamental right to parole, or that he is a member of a suspect class.

receive another release consideration until 2023, the same year in which Inmate Solly will receive his next parole consideration." (Imbrogno Affidavit, ¶ 20.)

*Solly v. Mausser*, 2018 WL 1070504, at *8 (emphasis added).

Inmate Jovanovich's parole situation appears to have proceeded in lockstep with Plaintiff again in 2023. Contrary to Plaintiff's assertion in his new Complaint that his co-defendant was *granted* parole (Complaint, ¶ 49), it appears that he was *denied* parole in 2023. *See* "Offender Details" for Phillip Jovanovich, ODRC's website, https://appgateway.drc.ohio.gov/Offender Search/Search/Details/A161429 (last visited June 10, 2024). The ODRC's records indicate that the result of the "Latest Parole Board Hearing/Review Type" was a "CONTINUED HEARING." *Id*. Further, the continuance was for ten years, or until April 2033—the same as Plaintiff. *Compare id*. *with* "Offender Details" for Gregory Solly, available at https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/A160947 (last visited June 10, 2024)).

The Court need not uncritically accept Plaintiff's factual assertion about his co-defendant where it is demonstrably untrue. *See Jenkins v. Nord,* No. 1:23-cv-320, 2023 WL 7134590, at *4 (S.D. Ohio Sept. 25, 2023), *report and recommendation adopted*, 2023 WL 7131826 (S.D. Ohio Oct. 30, 2023) (noting that the Prison Litigation Reform Act "gives courts 'the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless'" and that a court may consider "'judicially noticeable facts' that bear upon the plaintiff's allegations" in doing so) (internal citations omitted).[9]

---

[9] The Court may take judicial notice of inmate information provided on the ODRC's website. *See Doss v. Corizon, Inc*., 636 F. Supp. 3d 807, 811 (W.D. Mich. 2022) (taking judicial notice of "information provided by a search of the MDOC's [Michigan Department of Corrections] website); *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) (taking judicial notice of information from the Bureau of Prison's inmate locator service on its official website); *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 810 (E.D. Tenn. 2019) ("Information taken from government websites is self-authenticating under Fed. R. Evid. 902, and courts may accordingly take judicial notice of the information found on these websites.").

Because Plaintiff was treated the same as his co-defendant, and because he has not identified any other inmates who were treated in any way different than him, or pled facts to show they were similarly situated, or said anything at all beyond the conclusory statement that he was treated differently than others, he has failed to state a plausible equal protection claim in this respect. *See Boone v. Nemesito*, No. 1:20-cv-389, 2020 WL 3046011, at *10 (W.D. Mich. June 8, 2020) (calling the plaintiff's allegation "hopelessly conclusory" where he identified one comparator but provided little information about others); *Project Reflect, Inc. v. Metropolitan Nashville Bd. of Public Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) (where the plaintiff "fail[ed] to plead the existence of a similarly situated comparator . . . the Complaint does not contain sufficient factual matter to state a plausible claim for relief under the Equal Protection Clause").

Plaintiff also alleges that Defendants: denied him a meaningful parole hearing, denied him the opportunity to present evidence to refute false information, denied him the ability to submit letters from the victim's sister, intimidated him by asking about his religious beliefs, "increased" his crime to aggravated murder, and refused to provide Plaintiff with a copy of his "parole candidate information sheet." (Complaint, ¶¶ 1(1), 1(2), 1(4), 1(5), 1(6), 16, 40, 43, 51). As noted in Section III.A, some of these allegations may proceed as part of Plaintiff's due process claim. But he also labels these allegations violations of his equal protection rights. (*Id*.). The claims, however, are not further explained and suffer from the same issue as his claims discussed above—he has not identified anyone similarly situated who was treated differently or described in what way they were treated differently than him. He has simply labelled these perceived wrongs as a violation of the Equal Protection Clause, which is insufficient to state a claim on which relief may be granted. *Iqbal*, 556 U.S. at 678 (a complaint that consists of labels

and conclusions is insufficient).  For these reasons, Plaintiff's equal protection claims should be dismissed for failure to state a claim.

        3.      Religion Claim – First Amendment

Plaintiff asserts that a Defendant "intimidated" him with "imposing questions" about his religious beliefs.  (Complaint, ¶¶ 1(6), 26).  "Plaintiff, [who] is Jewish, due to [recent] anti-Semitic events, declined to respond."  (Complaint, ¶ 26).  Plaintiff characterizes these questions about his religious belief as violating his "substantive rights under the First Amendment."  (*Id.*, PageID  79-80).  There are no other allegations in the Complaint about religious issues.  Notably, Plaintiff does not allege he was denied parole because of his religion.  His allegation appears to be that the Defendant violated his rights just by asking the questions.

The Undersigned is unable to discern a violation of Plaintiff's First Amendment rights in this allegation.  Concerning religion, the First Amendment says:  "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]"  U.S. Const. amend. I.  Plaintiff does not suggest that the questions kept him from freely exercising his religion, or that the questions amounted to a law, policy, or practice that established a religion. *See Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (quoting *Mozert v. Hawkins Cty. Bd. of Educ.*, 827 F.2d 1058, 1066 (6th Cir. 1987)) ("[A] litigant suffers an injury to [his or her] free exercise rights when the state compels [him or her] "to do or refrain from doing an act forbidden or required by one's religion, or to affirm or disavow a belief forbidden or required by one's religion.'"); *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 788 F.3d 580, 586 (6th Cir. 2015) (discussing when a governmental action violates the Establishment Clause).  The few facts Plaintiff has included on this issue simply do not state a First Amendment claim.

If Plaintiff invoked the First Amendment but meant to cite the Equal Protection Clause of the Fourteenth Amendment (as discussed above), the allegation that he was asked about his religion does not present a plausible equal protection claim for the reasons described in the previous section. Again, the Undersigned notes that Plaintiff does not allege that he was denied parole on the basis of his religion. He simply says his rights were violated, which is not enough. *See also Solly v. Mausser*, 2018 WL 1070504, at *3 (quoting *Iqbal*, 556 U.S. at 678) (Such a "naked assertion[ ] devoid of further factual enhancement" is insufficient to state a plausible claim for relief) (internal quotation marks and citation omitted).

Plaintiff's claim concerning questions about his religion—whatever its basis—should be dismissed. *See generally Perkins v. Chandler*, No. 5:12-cv-P12-R, 2013 WL 1966275, at *4 (W.D. Ky. May 10, 2013) (dismissing free exercise and equal protection claims where "Plaintiff mention[ed] his 'Islamic Religion,' [but] allege[d] no facts even suggesting that Defendants denied his parole because of his religion") (citation omitted).

4.    Cruel and Unusual Punishment Claim - Eighth Amendment

Plaintiff appears to allege that Defendants violated the Cruel and Unusual Punishments Clause of the Eighth Amendment in three ways. First, by using the victim's autopsy photographs, as mentioned in Section III.A. This claim is proceeding.

Second, Plaintiff frames his allegation that Defendants' records said he was convicted of aggravated murder rather than second degree murder as an Eighth Amendment violation. (*Compare* Complaint, ¶ 1(5) *with* ¶¶ 40, 51). This allegation is also proceeding, as part of Plaintiff's due process claim. Section III.A. But to the extent Plaintiff attempts to package it as cruel and unusual punishment, it fails. Plaintiff says that Defendants relied on false information "that Plaintiff's crime is actually aggravated murder according to their information." (Complaint, PageID 78). This suggests, as Plaintiff alleges, that there was an error in the

15

Board's records. It does not plausibly suggest anything other than inadvertence or negligence, neither of which will support a Section 1983 claim. *See generally Rhodes v. Michigan*, 10 F.4th 665, 673 (6th Cir. 2021) (quoting *Estelle v. Gamble*, 429 U.S. 97, 105 (1976)) ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."); *Warren v. Doe*, 28 F. App'x 463, 464 (6th Cir. 2002) (citing *Ritchie v. Wickstrom*, 938 F.2d 689, 692 (6th Cir. 1991)) ("the district court properly dismissed [the plaintiff's] case because his allegations involved mere negligence that is not actionable under § 1983"); *Davis v. Caruso*, No. 07-cv-11740, 2009 WL 877964, at *10 (E.D. Mich. Mar. 30, 2009) (concluding that the plaintiff did not state an Eighth Amendment claim concerning an alleged clerical error where he speculated that a defendant may have intentionally made the error, and calling the speculation an "unwarranted factual inference"). Thus, while this allegation may proceed as part of a due process claim, it does not state a claim of cruel and unusual punishment.

> Third, Plaintiff alleges more generally that:

> Defendants actions have caused psychological and emotional duress, depression, and other post traumatic symptoms to Plaintiff's mental health, each causing cruel and unusual punishment, in violation of the Eight Amendment to the United States Constitution.

(Complaint, PageID 67 (as in original)). This allegation does not state a claim either.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Walker v. Baker*, No. 23-1232, 2023 WL 6380124, at *3 (6th Cir. Sept. 27, 2023) (quoting *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1093 (6th Cir. 2019)). The United States Court of Appeals for the Sixth Circuit has squarely held that "the denial of parole does not implicate the Eighth Amendment's prohibition on cruel and unusual punishment." *Wampler v. Handwerk*, No. 23-3010, 2023 WL 4353402, at *3 (6th

16

Cir. June 23, 2023), *cert. denied*, 144 S. Ct. 367 (2023) (citations omitted).  Consequently, to the extent that Plaintiff bases his Eighth Amendment claim on Defendants' decision to deny parole and impose a ten-year continuance, he fails to state a claim.

### 5.  Claim against Parole Officer Coleson

Plaintiff makes one factual allegation against Defendant Coleson:  that he denied Plaintiff's request for a copy of his "parole candidate information sheet" in April 2023, prior to the parole hearings.  (Complaint, ¶¶ 16, 43).  Plaintiff believes the sheet contained false information and says that Coleson's denial prevented him from preparing and presenting information to rebut that false information.  (*Id*.).  He labels the denial a violation of equal protection and due process.[10]  (*Id*., ¶ 43).

With respect to a "parole candidate information sheet," Plaintiff may be referring to a non-public parole board record, as mentioned in Ohio Administrative Code § 5120:1-1-36.  This section provides, in part:

> Notwithstanding paragraph (B) of this rule, the following non-public parole board records shall be made available to representatives of approved media organizations, government officials, victims of any offense of commitment or a subsequent parole violation, or <u>a licensed attorney at law designated by the victim or the inmate</u> under the conditions and according to the procedures set forth in this rule:

---

[10] Throughout the pro se Complaint, Plaintiff refers to his "substantive" rights under various amendments.  (*See*, *e.g.*, Complaint, ¶ 40 (alleging a "violation of Plaintiff's substantive rights to the First Amendment Equal Protection Clause; and the Fifth, Sixth, and Fourteenth Amendment Rights to Due Process of Law")).  He does so within his allegation against Coleson.  (*Id*., ¶ 43 (alleging "a denial of substantive rights to the Equal Protection of Law to the First Amendment, and denial of substantive rights to Due Process of the Law to the Fourteenth Amendment")).  It appears that Plaintiff may have included the reference to "substantive" rights to emphasize the importance of his rights, rather than to raise a technical "substantive due process" claim (as compared to a "procedural due process" claim).  The discussion in this section presumes that Plaintiff is raising a procedural due process claim with respect to Defendant Coleson.  (*See* Complaint, PageID 67 (stating, in his Preliminary Statement:  "Plaintiff does not claim immediate entitlement to parole, but instead lodges a challenge to the procedures used during the parole process as generally improper or improper as applied in his case").  In any event, the claim against Coleson would not succeed as a "substantive due process" claim because Plaintiff has not identified a protectable interest (that is, he has no protectable interest in parole), and because the alleged wrong—not providing a form upon request—does not shock the conscience.  *See generally Kerchen v. Univ. of Michigan*, 100 F.4th 751, 763-64 (6th Cir. 2024); *Wampler v. Handwerk*, No. 23-3010, 2023 WL 4353402, at *2 (6th Cir. June 23, 2023).

(1) Parole board decision sheets

(2) Parole board criminal history risk score when administered

(3) Hearing officer sanction receipt

(4) Revocation order

(5) Post-release control result notification

(6) <u>Parole candidate information sheets</u>

Ohio Admin. Code § 5120:1-1-36(D) (emphasis added).

The Undersigned first notes that Section 1983 does not provide a remedy for alleged violations of state law. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL 5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007)) ("The purpose of § 1983 is to remedy violations of federal law, not state law."). Thus, to the extent that Plaintiff's claim is based solely on a perceived violation of the above Ohio Administrative Code section, it fails.

It also fails as an equal protection claim, as mentioned briefly in Section III.B.2. More specific to the "parole candidate information sheet," Ohio's Tenth District Court of Appeals (the court that authored Ohio's two published cases mentioning these sheets) has said that inmates are not automatically entitled to receive them upon request. *See generally State ex rel. Watson v. Mohr*, 10th Dist. Franklin No. 10AP-949, 2011-Ohio-402, ¶¶ 13-15, 46 (Oct. 20, 2011), *aff'd on other grounds*, 131 Ohio St. 3d 338 (Mar. 15, 2012) (concluding that inmate was not entitled to his parole candidate information sheet where he did not designate a licensed attorney to receive it: "The administrative code clearly limits who may receive nonpublic records. Watson [the inmate] cannot demand and receive them directly."); *Brust v. Ohio Parole Bd.*, 10th Dist. Franklin No. 2AP-581, 2023-Ohio-4104, ¶ 33 (Nov. 14, 2023) ("ODRC is required to make

18

certain non-public parole board documents available to an inmate's attorney, including the parole candidate information sheets . . ."); *cf. Bailey v. Wainwright*, 951 F.3d 343, 345 (6th Cir. 2020) (noting in a federal habeas corpus case that "several Ohio prisoners, including [the petitioner Bailey, had] "successfully petitioned the Board for their parole candidate information sheets").

Plaintiff here does not allege that he requested his parole candidate information sheet through an attorney. (*See* Complaint, ¶ 16). Accordingly, under prevailing Ohio law, it appears that plaintiff did not have a right to this document, much less a fundamental right to receive it. *See generally Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) ("The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis.").

There is also no allegation that a similarly situated inmate received his sheet upon request under the same circumstances as Plaintiff. For the reasons articulated in Section III.B.2, the equal protection aspect of the claim against Coleson should be dismissed.

The due process aspect of the claim should also be dismissed. The Sixth Circuit has recognized a narrow procedural due process claim for prisoners denied parole, where they plausibly allege that their parole file contains false information. *See, e.g., Dodson v. Mohr*, No. 21-3778, 2022 WL 3954932, at *3 (6th Cir. July 28, 2022) (citing *State ex rel. Keith v. Ohio Adult Parole Auth.*, 141 Ohio St. 3d 375 (2014)) ("the OPB's knowing reliance on false information in a parolee's file, which is prohibited under state law, can constitute a due process violation"). Plaintiff is raising such a claim. *See* Section III.A.

The Ohio Supreme Court's *Keith* case, on which the Sixth Circuit relied, has not been extended to require parole officials to provide copies of parole files to prisoners. In fact, the

Ohio Supreme Court has said the opposite:

> In *Keith I*, this court held that the OAPA was not required to conduct an extensive investigation in every prisoner's case to ensure the accuracy of its files. 141 Ohio St.3d 375, 2014-Ohio-4270, 24 N.E.3d 1132, at ¶ 27. Nor does *Keith I* or *Keith II* require the parole board to allow inmates to review their parole records and formally respond prior to a hearing. Under current DRC policy, each inmate is permitted to respond to the factual information discussed at the hearing and to submit verbally or in writing any additional information that is pertinent. Ohio Department of Rehabilitation and Correction, *Policy No. 105-PBD-03*, at 9, https://drc.ohio.gov/Portals/0/Policies/DRC% 20Policies/105-PBD-03% 20(July% 202017).pdf?ver=2017-07-31-141430-577 (accessed Jan. 22, 2019). [The inmate] was permitted to raise his claims, and he did have an error corrected. He has failed to prove a clear legal right to review his parole record prior to a scheduled parole hearing.

*State ex rel. Brust v. Chambers-Smith*, 156 Ohio St. 3d 331, 336, 2019-Ohio-857, 126 N.E.3d 1099 (emphasis added). *See also Beckman v. Ohio Parole Bd.*, Franklin C.C.P. No. 21CV7757, 2022 WL 20611240, at *9 (Apr. 29, 2022) (citing *Brust v. Chambers-Smith*, 2019-Ohio-857, ¶ 21) (finding no statutory support or support in *Keith* that would entitled prisoner to records); *Brust v. Ohio Parole Bd.*, 10th Dist. Franklin No. 22AP-581, 2023-Ohio-4104, ¶ 16 (Nov. 23, 2023) (noting that earlier *Brust* case "determined [that] inmates do not have a due process right to review their parole record prior to a hearing"); *Moore v. Ohio Parole Bd.*, 10th Dist. Franklin No. 2023-Ohio-3651, ¶ 14 (June 1, 2023) (citing *Brust v. Chambers-Smith,* 2019-Ohio-857, ¶ 21) ("an inmate seeking parole has no clear legal right to review his or her parole record prior to the scheduled hearing").

Accordingly, because Plaintiff's claim here is outside the narrow due process claim permitted in *Keith* and recognized by the Sixth Circuit, and because the Ohio Supreme Court has explicitly said there is no right to records, Plaintiff does not state a plausible due process claim against Coleson.

The sole allegation against Coleson should therefore be dismissed, and he should be dismissed from the case as a defendant.

6.    Claim against Director Chambers-Smith

With respect to this defendant, Plaintiff alleges only that she "is the Director for the Ohio
Department of Rehabilitation and Correction. She is sued in her individual and official
capacities." (Complaint, ¶ 5). In the requests for relief, Plaintiff asks for a declaration that:

> The actions of defendant Annette Chambers-Smith, as Director of the Ohio
> Department of Rehabilitation and Correction's, permits and promotes the actions
> of Lisa Hoying, Glenn Holmes, Joe Brumfield, Lance Presley, Steve Herron, Scott
> Widmer, and Marc Houk, violates plaintiff's substantive rights under the First
> Amendment Equal Protection, and Fourteenth Amendment.

(*Id.*, PageID 81 (as in original)). Plaintiff does not say, however, what the Director's "actions"
were. Similarly, Plaintiff seeks damages against the Director for "permitting defendants" to
punish him more severely than his co-defendant and other inmates. (*Id.*, PageID 84).

It appears that Plaintiff seeks to hold the Director responsible on a respondeat superior,
vicarious liability, or supervisory liability basis for the behavior of others. But defendants
"cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis."
*Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey*, 949
F.2d 1127, 1129-30 (11th Cir. 1992)). "Rather, individuals sued in their personal capacity under
§ 1983 are liable only for their own unconstitutional behavior." *Hollis v. Erdos*, 480 F. Supp. 3d
823, 833 (S.D. Ohio May 12, 2020) (citing *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir.
2011)). Here, there are no allegations that the Director did anything to, about, or against
Plaintiff.

To the extent the Director may hold a supervisory position over the other defendants,
there are no allegations in the Complaint that would allow her to be held liable on that basis. To
do so, Plaintiff must allege "'[a]t a minimum' . . . that the defendant 'at least implicitly
authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending
officers.'" *Graves v. Malone*, 810 F. App'x 414, 420 (6th Cir. 2020) (quoting *Peatross v. City of*

*Memphis*, 818 F.3d 233, 242 (6th Cir. 2016)); *see also Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citing *Miller v. Calhoun County*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005)) ("Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability.").  No such allegations are made in the Complaint.  Therefore, any claim against Annette Chambers-Smith should be dismissed, and she should be dismissed as a defendant.

IV.     **<u>Service</u>**

Because Plaintiff has paid the filing fee (ECF No. 4), he is responsible for service of process on each Defendant against whom claims are proceeding.  He is also responsible for providing the copies necessary to complete service.  *See* Fed. R. Civ. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service.").

If Plaintiff wishes to have to the Clerk of Court serve process for him, he shall submit to the Clerk the following documents for each of the seven Defendants against whom a claim is proceeding:

1. a service copy of the Complaint,

2. a fully completed Summons form,[11] and

3. an addressed envelope bearing sufficient certified mail postage to serve the Summons and Complaint on that Defendant.

Plaintiff shall submit these items **<u>within thirty days</u>** if he wishes the Clerk to serve process.

---

[11] Plaintiff submitted Summons forms for Defendants along with the Complaint.  (*See* ECF No. 1-3).  However, the Summons forms are incomplete and lack Plaintiff's address.

22

V.      **Summary and Conclusion**

Having screened the Complaint (ECF No. 6) as required under 28 U.S.C. § 1915A, the Undersigned concludes that three of Plaintiff's claims may **PROCEED** forward at this time:

    a.  his Fourteenth Amendment due process claim concerning the parole hearing,

    b.  his claim concerning the maximum length of a continuance, and

    c.  his Eighth Amendment claim concerning the autopsy photographs.

The first two claims may proceed against seven Defendants:  Holmes, Brumfield, Widmer, Pressley, Herron, Hoying, and Houk.  The third claim may proceed against four Defendants: Brumfield, Widmer, Pressley, and Herron.  Section III.A.

The Clerk of Court is **DIRECTED** to return the incomplete Summons forms to Plaintiff for the Defendants Holmes, Brumfield, Widmer, Pressley, Herron, Hoying, and Houk.  (*See* ECF No. 1-3).  Plaintiff is responsible for having the Complaint and Summons form served on these Defendants.  Section IV.

The Undersigned **RECOMMENDS** that the Court **DISMISS** the remaining claims under 28 U.S.C. § 1915A, including:

    1.  the official capacity claims for damages (Section III.B.1),

    2.  the equal protection claims under the Fourteenth Amendment (Section III.B.2),

    3.  the religion claim under the First Amendment (Section III.B.3),

    4.  the Eighth Amendment claims based on denial of parole and an "increased" offense (Section III.B.4),

    5.  the claim against Parole Officer Coleson (Section III.B.5), and

    6.  the claim against Director Chambers-Smith (Section III.B.6).

Plaintiff may file objections to this Recommendation in the manner described in the following

section.  He is **ADVISED** that he must keep this Court informed of his address while this case is pending and promptly file a Notice of New Address if he is transferred or released.

**VI.**    **Notice Regarding Objections to this Report and Recommendation**

If any party objects to this Report and Recommendation ("R&R"), the party may serve and file specific, written objections to it **within fourteen days** after being served with a copy thereof.  Fed. R. Civ. P. 72(b).  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  The Court may extend the 14-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to which objection is made.  Upon proper objection, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

June 18, 2024                                            *s/ Elizabeth A. Preston Deavers*
                                                        Elizabeth A. Preston Deavers
                                                        UNITED STATES MAGISTRATE JUDGE